IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Clifford Eaton, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil No. 3:05cv55 |
| | ) | |
| Credit Bureau of Detroit Lakes, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Clifford Eaton ("Eaton") and defendant Credit Bureau of Detroit Lakes, Inc.

("Credit Bureau") have filed cross motions for summary judgment (Doc. #18 and #22).  Eaton

asserts Credit Bureau violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692

("FDCPA"), by attempting to collect a civil penalty without first obtaining court approval.

Credit Bureau argues that inclusion of the civil penalty is permitted by statute.  Credit Bureau

also argues the one year statute of limitations provided in 15 U.S.C. § 1692k forecloses Eaton's

claim on all but five checks written in October 2004.  For the following reasons, Eaton's motion

for summary judgment is **GRANTED** in part and **DENIED** in part, and Credit Bureau's motion

for summary judgment is **GRANTED** in part and **DENIED** in part.  The court finds that Credit

Bureau violated the FDCPA by assessing a civil penalty in violation of state statutes M.S.A. §

604.113 and N.D. Cent. Code § 6-08-16, but that the one year statute of limitation, 15 U.S.C. §

1692e(8),  precludes recovery except for Eaton's claims on five checks written to Stop-N-Go.

These claims are actionable due to Credit Bureau's attempt to collect civil penalties on these

instruments within one year of commencement of this action.

**Factual Background**

1.    <u>Tesoro and Giovanni's Checks</u>

In October or November, 2004, Eaton obtained copies of his credit report from the three national credit bureaus, Experian, Equifax and Trans Union.  <u>Affidavit of Clifford Eaton</u>, at ¶ 2 (Doc. #21) (hereafter <u>Eaton Aff.</u>).  The report showed four open collection accounts owed to Credit Bureau: $175.00 each for two checks written to Expressway Tesoro, and balances of $125.00 and $124.00 for two checks written to Giovanni's Pizza.  <u>Eaton Aff.</u> at ¶ 5.[1]  On November 8, 2004, Eaton requested information from Credit Bureau regarding these four checks.  <u>Eaton Aff.</u> ¶ 6.  Credit Bureau mailed him copies of the checks.  <u>Eaton Aff.</u> ¶ 7.  One check written to Expressway Tesoro was dated February 4, 2003; the other was dated February 15, 2003.  Both were in the amount of $50.00.  <u>Plaintiff's Brief in Support of Motion for Summary Judgment</u>, at Ex. 2;  <u>Affidavit of Erin Conroy</u>, Ex. C and D (hereafter <u>Conroy Aff.</u>).  The two Giovanni's Pizza checks were for the amounts of $47.50 and $47.00, written on March 27, 2003 and April 7, 2003, respectively.  <u>Eaton Aff.</u> ¶ 7;  <u>Plaintiff's Brief in Support of Motion for Summary Judgment</u>, at Ex. 2;  <u>Conroy Aff.</u>, Ex. E and G.

2.    <u>Stop-N-Go Checks</u>

In a letter to Eaton dated November 29, 2004, Credit Bureau demanded payment of $346.58 for two checks written to Stop-N-Go.  <u>Plaintiff's Brief in Support of Motion for Summary Judgment</u>, at Ex. 3.  The demand letter listed a past due balance on check #1193 of $201.58 and on check #1195 of $145.00.  <u>Id.</u>  Eaton inquired about these checks and received

---

[1]The court has not received copies of Eaton's credit reports.  However, the court accepts as true plaintiff's statements as to the amount reported, since Credit Bureau does not refute them.

2

copies of them on or about December 7, 2004.  <u>Eaton Aff.</u> ¶ 9-10.  Check #1193 had been

written on October 8, 2004 to Stop-N-Go for $76.58.  Check #1195 was written to Stop-–Go on

October 10, 2004 in the amount of $30.00.  <u>Eaton Aff.</u> ¶ 10;  <u>Plaintiff's Brief in Support of</u>

<u>Motion for Summary Judgment</u>, at Ex. 4, <u>Conroy Aff.</u>, Ex. H and J.  Credit Bureau had placed

the following handwritten statement below the copies of the checks:

> Civil Penalty has been added to these checks because they were not taken care of within
> 30 days.  ND Civil Penalty is 3 times the check amount or $100 whichever is less.  Please
> call with any further questions.  Thank you.

<u>Plaintiff's Brief in Support of Motion for Summary Judgment</u>, at Ex. 4.

By letter dated December 7, 2004, Credit Bureau demanded payment of $524.76 for three

additional checks written to Stop-N-Go.  <u>Eaton Aff.</u> ¶ 11, <u>Plaintiff's Brief in Support of Motion</u>

<u>for Summary Judgment</u>, at Ex. 5.  Credit Bureau identified the amounts due as $206.68 on check

#1132, $199.00 on check #1135, and $119.08 for check #1139.  <u>Id.</u>  Eaton inquired about these

checks as well,  and Credit Bureau sent him copies.  <u>Eaton Aff.</u> ¶ 12-13.  Check #1132 was

written on October 16, 2004 to Stop-N-Go in the amount of $81.68.  Check #1135 was written to

Stop-N-Go on October 17, 2004 for $74.00.  Check #1139 was written to Stop-N-Go on October

19, 2004 for $23.52.  <u>Eaton Aff.</u> ¶ 13;  <u>Plaintiff's Brief in Support of Motion for Summary</u>

<u>Judgment</u>, at Ex. 6; <u>Conroy Aff.</u>, Ex. K. L and M.

      3.     <u>Hornbacher's Checks</u>

After reviewing his credit report again, Eaton requested in January 2005 that Credit

Bureau provide information concerning two collection accounts for returned checks written to

Hornbacher's and listed on the credit reports with balances of $191.00 and $165.00.  <u>Eaton Aff.</u>

¶ 14.  On January 14, 2005, Eaton received from Credit Bureau a copy of check #2610 written to

Hornbacher's, dated January 4, 2000, for $85.78 and a copy of check #132 to Hornbacher's,

dated December 9, 2003, for $67.59.  <u>Eaton Aff.</u> ¶ 15; <u>Plaintiff's Brief in Support of Motion for</u>

<u>Summary Judgment</u>, at Ex. 7;  <u>Conroy Aff.</u>, Ex. A and O.  Credit Bureau added a handwritten

note on Eaton's copy of the checks:

> Clifford,
>> Check 2610 is a balance of $191.56 and can be paid to us.
>> Check 132 has been sent to lawyers for collections.  You need to contact them at
> ... (phone number provided).

<u>Eaton Aff.</u> ¶ 15;  <u>Plaintiff's Brief in Support of Motion for Summary Judgment</u>, at Ex. 7.

Credit Bureau customarily followed a practice of mailing written notice of delinquent

accounts to the debtor on the Monday, Wednesday or Friday after receipt of returned checks.

<u>Affidavit of Robert Nagel</u>, ¶ 3.   Eaton has presented no evidence to show that Credit Bureau

failed to follow this practice on each of his checks.

Eaton commenced this action on May 24, 2005.

## Summary Judgment Standard

Summary judgment is appropriate if there is not a genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(c); <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 322 (1986).  Rule 56 of the Federal Rules of Civil Procedure "mandates

the entry of summary judgment . . . against a party failing to make a showing sufficient to

establish the existence of an element essential to that party's case."  <u>Celotex</u>, 477 U.S. at 322.  If

the moving party has supported its motion for summary judgment, the nonmoving party has an

affirmative burden placed on it to go beyond the pleadings and show a genuine triable issue of

fact.  <u>Commercial Union Ins. Co. v. Schmidt</u>, 967 F.2d 270, 271 (8th Cir. 1992).  However, the

court considering a motion for summary judgment must view the evidence in the light most

4

favorable to the nonmoving party who enjoys "the benefit of all reasonable inferences to be drawn from the facts." Vacca v. Viacom Broadcasting of Missouri, Inc. et al., 875 F.2d 1337, 1339 (8th Cir. 1989)(citation omitted).

Summary judgment is improper if the court finds a genuine issue of material fact; however, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . .." Commercial Union Insurance Co. v. Schmidt, 967 F.2d 270, 271-72 (8th Cir. 1992)(citation omitted). The issue is whether "the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995).

## Discussion

I.    Fair Debt Collection Practices Act.

Eaton alleges Credit Bureau violated the FDCPA "by attempting to collect more from Eaton than what he may have legally owed for various bad checks." Plaintiff's Brief in Support of Motion for Summary Judgment, at 4. Specifically, Eaton argues that "civil penalties are not automatic and can only be awarded by a court of law." Id. at 6. Credit Bureau does not deny it assessed civil penalties, but it argues "additional penalties were added pursuant to applicable state statute. Minn. Stat. Ann. § 504.113." Brief in Support of Defendant's Motion for Summary Judgment, at 7.[2]

---

[2] Credit Bureau argues it has complied with both North Dakota and Minnesota collection statutes. It is unclear from the parties' factual recitation which statute applies to a particular check. The court addresses the FDCPA as it applies to both jurisdictions.

The Fair Debt Collections Practices Act prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e.  This section provides, in relevant part:

> § 1692e. False or misleading representations.
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> **...**
>
> **(2)** The false representation of–
>
> **(A)** the character, amount, or legal status of any debt;  or
>
> **(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

15 U.S.C. § 1692e.  "In evaluating whether a debt collection letter is false, misleading or deceptive, the letter must be viewed through the eyes of the unsophisticated consumer."  Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000) (citing Jang v.A.M. Miller and Assoc., 122 F.3d 480, 483 (7th Cir. 1997)).[3]

Minnesota Statute § 604.113 outlines the fees and penalties applicable to dishonored checks.  This section states, in relevant part:

> 604.113. Issuance of worthless check.
>
> **Subd. 2. Acts constituting.**  Whoever issues any check that is dishonored is

---

[3]Eaton filed a Motion to Strike (Doc. #37), asserting portions of Credit Bureau's Reply to Plaintiff's Motion for Summary Judgment "are irrelevant and an attack of personal character with the obvious attempt to sway the opinion of the court."  The court is not impressed by Credit Bureau's "mud slinging" or persuaded to apply a different standard to Eaton.  Therefore, the court **DENIES** Eaton's Motion to Strike (Doc. #37).

liable for the following penalties:

(b) If the amount of the dishonored check is not paid within 30 days after the payee or holder has mailed notice of dishonor pursuant to section 609.535 and a description of the penalties contained in this subdivision, whoever issued the dishonored check is liable to the payee or holder of the check for:

(1) the amount of the check, the service charge as provided in paragraph (a), plus a civil penalty of up to $100 or the value of the check, whichever is greater.  In determining the amount of the penalty, **the court shall consider** the amount of the check and the reason for nonpayment.  The civil penalty may not be imposed until 30 days following the mailing of the notice of dishonor. A payee or holder of the check may make a written demand for payment of the civil liability by sending a copy of this section and a description of the liability contained in this section to the issuer's last known address.  Notice as provided in paragraph (a) must also include notification that additional civil penalties will be imposed for dishonored checks for nonpayment after 30 days;..

M.S.A. 604.113 (emphasis added).  Minnesota law provides that the issuer of a dishonored check may be liable for a civil penalty of up to $100 or the value of the check, whichever is greater.  The court determines the amount of the penalty, taking into consideration the amount of the check and the reason for the nonpayment.  Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000).  In Duffy, the court held that the statutory provision stating the debtor is liable for *up to* a $100 civil penalty confirms that the parties must proceed to hearing by the court to determine the amount of the penalty.  Id.  "It is not certain that a Minnesota court would impose the entire $100 penalty in any given situation." Id. at 874.

Similarly, North Dakota Century Code § 6-08-16 provides for court determination of any civil penalties for dishonor of a check.  This section states, in relevant part:

 6-08-16  Issuing check or draft without sufficient funds or credit - Notice - Time limitation - Financial liability - Penalty.

2 .... If the person does not pay the instrument in full and any collection fees or costs not in excess of thirty dollars within ten days from receipt of the notice of

dishonor provided for in subsection 4, a civil penalty is also recoverable **by civil action** by the holder, or its agent or representative, of the check, draft, electronic funds transfer authorization, or order. The civil penalty consists of payment to the holder, or its agent or representative, of the instrument of the lesser of two hundred dollars or three times the amount of the instrument. The court may order an individual convicted under this section to undergo an evaluation by a licensed gaming, alcohol, or drug addiction counselor.

...

4. A notice of dishonor may be mailed by the holder, or the holder's agent or representative, of the check upon dishonor. Proof of mailing may be made by return receipt or by an affidavit of mailing signed by the individual making the mailing. The notice must be in substantially the following form:Notice of Dishonored CheckDate Name of Issuer Street Address City and State You are according to law notified that a check dated , , drawn on the  Bank of in the amount of  has been returned unpaid with the notation the payment has been refused because of nonsufficient funds. Within ten days from the receipt of this notice, you must pay or tender to (Holder or agent or representative)sufficient moneys to pay such instrument in full and any collection fees or costs not in excess of thirty dollars.

The notice of dishonor also may contain a recital of the penal provisions of this section and **the possibility of a civil action to recover any collection fees or costs or civil penalty authorized by this section.**

N.D. Cent. Code § 6-06-16 (emphasis added).  A civil penalty is clearly recoverable only by civil action.  Therefore,  Credit Bureau's attempts to collect more than the amount of the checks plus the allowable service fee violated the FDCPA.

II.     Statute of Limitations.

Credit Bureau asserts that, "with the exception of four checks written in October 2004,"[4] Eaton's claims are untimely.  Brief In Support of Defendant's Motion for Summary Judgment, at 11.

The FDCPA contains the following statute of limitations:

---

[4]There were in fact five checks written to Stop-N-Go in October 2004.

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, <u>within one year from the date on which the violation occurs.</u>

15 U.S.C. § 1692k(d) (emphasis added).  Eaton commenced of  this action in May 2005,  "more than five years after the initial notification was issued on the  first check [to Hornbacher's in 2000], and two years after notification on the [five] checks written [to Hornbacher's, Tesoro, and Giovanni's] in 2003."   <u>Brief In Support of Defendant's Motion for Summary Judgment</u>, at 11.

Credit Bureau's mailing of each collection letter triggered the statute of limitations on the listed checks.  <u>See</u> <u>Mattson v. U.S. West Communications, Inc.,</u> 967 F.2d 259, 261  (8th Cir. 1992) (The court noted that the mailing of the collection letters "was the [debt collector's] last opportunity to comply with the FDCPA, and mailing of the letters, therefore, triggered section 1692k(d)."). Eaton has produced two demands for payment from Credit Bureau seeking payment in excess of that allowed by law.  In the first letter, dated November 29, 2004,  Credit Bureau sought to collect $201.58 for a check written in the amount of $76.58 and $145.00 for a check written in the amount of $30.00.  Ex. 3.  Credit Bureau admitted it had added a civil penalty to these checks.  Ex. 4. In the second demand letter, dated December 7, 2004, Credit Bureau sought $206.68 for a check in the amount of $81.68, $199.00 for a check in the amount of  $74.00, and $119.08 for a check in the amount of $23.52. Ex. 5.  These demands violate the FDCPA, and Credit Bureau communicated each of them within one year of commencement of this action. Eaton's Motion for Summary Judgment is **GRANTED** as to Credit Bureau's demand for payment of civil penalties on the five Stop-N-Go checks, and Credit Bureau's Motion for Summary Judgment is **DENIED** as to these items. Eaton's remaining claims are untimely. Credit Bureau's Motion for Summary Judgment as to these remaining claims is **GRANTED**, and

9

Eaton's Motion for Summary Judgement is **DENIED** as to these claims.

III.    Attorney's Fees.

Credit Bureau seeks attorney fees under 15 U.S.C. § 1692k(a)(3).  This section provides that, if the court finds an action "was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees ...".  15 U.S.C. § 1692k(a)(3).  In light of the court's finding that Credit Bureau has violated the FDCPA by attempting to collect civil penalties without court approval, Credit Bureau's request for attorney fees is **DENIED**.

Conclusion

The record reveals that Credit Bureau violated the FDCPA by attempting to collect civil penalties from Eaton without court approval.  However, the court finds that, as a matter of law, only Eaton's claims relating to the five Stop-N-Go checks identified in Credit Bureau's correspondence dated November 29, 2004 and December 7, 2004 are timely.  The court **GRANTS** in part and **DENIES** in part plaintiff Clifford Eaton's Motion for Summary Judgment (Doc. # 18).  The court further **GRANTS** in part and **DENIES** in part defendant Credit Bureau of Detroit Lakes, Inc's Motion for Summary Judgment (Doc. #22).  A telephone conference will be conducted on Wednesday, October 24, 2007 at 9:30 a.m., with plaintiff to initiate the call,  to address the schedule for further proceedings in this case.

Dated this 21st day of September, 2007.

*/s/ Karen K. Klein*
Karen K. Klein
United States Magistrate Judge